**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TAMELA GATES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **CIVIL ACTION NO. 20-0245-CG-MU** |
| | ) |
| **DOLLAR TREE STORES, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment and brief in support thereof (Docs. 23 and 24), Plaintiff's opposition thereto (Doc. 31), and Defendant's reply (Doc. 33). For the reasons explained below, the Court will deny the motion.

## FACTS

This action arises from a trip and fall which occurred at the Mobile, Alabama Dollar Tree on October 8, 2018. Prior to the incident, Plaintiff was a regular guest at the subject Dollar Tree. (Doc. 25-1 at 6-7; PageID.1828-29). On the day of the incident, Plaintiff went to Dollar Tree with her granddaughter, Nikilynn, to buy items for an upcoming trip. (*Id*. at 7-8; PageID.1829-30). The pair obtained a shopping cart, selected the items they wanted, and proceeded to a register to check out. (*Id*. at 9-10; PageID.1831-32). While Plaintiff was checking out, Nikilynn walked away to return their shopping cart, then returned to Plaintiff's side. (*Id*. at 10-11; PageID.1832-33). Plaintiff finished checking out and began to walk towards

1

the front exit doors.  Plaintiff took one or two steps and fell.  (*Id.* at 13;

PageID.1835).  With respect to her fall, Plaintiff testified as follows:

Q. What happens next?

A. I walk around here and I fell.

Q. Okay. And what caused you to fall?

A. Well, we believe it was this green crate because apparently it had
been knocked. And the only reason that I say that is because the young
man who checked me out, he told my husband this is what she fell on.

Q. So you did not hear that?

A. No, I did not but I mean he was holding it up. I could not hear what
he was saying to my husband but –

Q. So you did ever see that green crate after your accident?

A. No.

Q. Okay. So you're uncertain about what caused your fall, correct?

A. I'm pretty sure that's what it was. It was over here. Whenever I fell,
it was over here and the young man picked it up and put it back there.

Q. Okay. So you were pointing to Defendant's -- I'm sorry --
Defendant's Exhibit 3. Can you draw a circle on Defendant's Exhibit 3
where you say the green crate was after your fall?

A. I believe it was right here.

Q. Okay. So I understood a moment ago you didn't see the green crate?

A. No.

Q. So how do you know it is or it was where you placed that circle?

A. No, I didn't see it here. When I fell, I did not see where it was. It
wasn't until I was over here and the young man picked it up. Like I

said, he picked it up and he's the one who said to my husband this is
what she fell on

 Q. Okay. So you do not know where the green crate was at the time of
your fall?

 A. No.

(*Id.* at 13-14; PageID.1835-36).  Plaintiff further testified that she did not see

anything blocking her path of travel.  (Doc. 31 at 5; PageID.1879).  However,

Plaintiff admitted she was looking up, not straight down at the floor.  (*Id.*).

At the time of Plaintiff's fall there were two cashiers working. One cashier,

Eric Thompson ("Thompson") checked Plaintiff out and the other, Carmela Colston

("Colston") was working at an adjacent register.  With respect to the incident,

Thompson testified that he did not see Plaintiff fall and did not see where Plaintiff's

feet were immediately prior to the fall.  (Doc. 25-7 at 2; PageID.1862).  However,

with respect to the crate, Thompson testified as follows:

Q:  What did you hear?

A:  Well, it's hard to say. Like I heard the crate move. But I didn't
initially look at it. Like I heard the crate kind of slide. And then I
heard her fall. But as I looked at it when I did look up, it's like the
crate barely moved and she was kind of like right here
(indicating) more forward to the crate than adjacent to it like –sorry.
Instead of catching the end and falling kind of like that (indicating) it
was more like she was forward.

Q:  All right. So we're looking at what we've previously marked as
Plaintiff's Exhibit 1. All right. Can you say again where the crate was?

A:  All right. The crate was right here (indicating).

Q:  You're pointing to the top of the water bottles?

3

A:  Yeah. It was in the position here but maybe just an inch or two forward.

Q:  Okay. Was it next to the black crate or on top of the water bottles? Can you say exactly where it was?

A:  Like I guess next to the crate, just barely next to it. Like it had just barely moved.

(Doc. 31 at 3; PageID.1877; Doc. 32-3 at 2; PageID.1914).  Thompson continued

testifying that he did not know if Plaintiff tripped on the crate for sure, only that

the crate was moved slightly forward after Plaintiff fell.  (*Id.* at 3; PageID.1915).

With respect to the crate and the incident, Colston testified as follows:

Q:  Were these crates visible to you on the other side of the cash register?

A:  I can see them, yes, from where I'm standing because I'm a cashier. You see what I'm saying? But a customer may not have seen those standing on the other side. She wouldn't have been able to see those.
[…]

A:  Yeah. It was this way like in the middle of the floor here, stacked on the floor.  Upon her coming around – her husband and daughter, I believe they walked ahead of her.  Upon coming around, she ended up tripping over this here (indicating).

Q:  You're saying this here.  She tripped over the –

A:  The water and the baskets.  At that time – that's where they keep the baskets.  There was more baskets in there too and then the water.  So she turned the way – she didn't see it, like I told you.

Q: How many baskets were stacked on top of the water?

A: At least four.

4

Q: Did you actually see her trip over the baskets

A: When she came around, yeah.  When I moved, I went to like go this way (indicating). I went around my cash register this way.  And when she came around she fell.  She fell.

[…]

Q: Did she say anything about how she fell or why she fell?

A: Yeah.  You could tell she was a little bit upset about it because she was like you've got water right here and baskets right here.  You know what im talking about.  I didn't see that. She didn't see it.  She didn't see it.

Q:  She said she didn't see it.

A:  She didn't see it.

(Doc. 32-4 at 2-4; PageID.1917-19).

In the three years prior to Plaintiff's incident, there had been no trip and fall accidents in the subject Dollar Tree.  (Doc. 25-3 at 1; PageID.1845).  Thirty minutes prior to Plaintiff's incident, store Manager Steven Kaminski ("Kaminski"), was in the area of Plaintiff's fall and did not notice anything out of place.  (*Id.*) Photographs of the area of the incident show a small stack of crates and water bottles stacked at the end of a register next to the path leading to the exit of the store.  (*See* Doc. 25-2).  The floor is cement or cement colored and the crate in question is green.  (*Id.*)  The stack of water/crate had been placed in the same location since the store was opened.  (Doc. 32-2 at 3; PageID.1909).  Shortly after the incident Kaminski, completed an incident report based on Plaintiff's description

5

of the incident which states "Customer after checking out was going to the exit of the store & fell over a stack of water and the edge of register #2".  (Doc. 31 at 6; PageID.1880; Doc. 32-2; PageID.1912).

On March 27, 2020, Plaintiff filed her Complaint in Mobile County Circuit Court alleging negligence and respondeat superior, which was subsequently removed to this Court. (Docs. 1 and 1-1).  On December 30, 2020, Defendant filed the subject motion and brief seeking summary judgment.  Docs. 23 and 24). Plaintiff has responded (Doc. 31) and Defendant has replied (Doc. 33).  The matter is ripe for adjudication.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250.

6

(internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

(11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response …. must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B.  Negligence

In [a] premises-liability case, the elements of negligence " 'are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages.' " *E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963, 969 (Ala.1985) (quoting David G. Epstein, *Products Liability: Defenses Based on Plaintiff's Conduct*, 1968 Utah L.Rev. 267, 270). "The owner of a premises … is not an insurer of the safety of his invitees and the principle of res ipsa loquitur is not applicable. There is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Tice v. Tice*, 361 So.2d 1051, 1052 (Ala.1978). In order to overcome a defendant's properly supported summary-judgment motion, the plaintiff bears the burden of presenting substantial evidence as to each disputed element of her claim. *See Ex parte Atmore Community Hosp.*, 719 So.2d 1190 (Ala.1998); *Mann v. Bank of Tallassee*, 694 So.2d 1375 (Ala. Civ. App., 1996).

*Ex parte Harold L. Martin Distrib. Co., Inc.*, 769 So. 2d 313, 314 (Ala. 2000).

Defendant contends that Plaintiff's negligence claim is due to be dismissed as a matter of law. More specifically, Defendant argues that Plaintiff has failed to present a dispute of material fact as to (1) the cause of her fall, (2) whether the hazard was open and obvious, and (3) whether notice existed. (Doc. 24, generally). The Court will address each argument in turn.

**1.      Causation**

Defendant first argues that Plaintiff's negligence claim is due to be dismissed because Plaintiff has failed to produce substantial evidence as to the cause in fact of her incident. (Doc. 24 at 8-11; PageID.1812-15). For legal support, Defendant relies on numerous cases requiring a Plaintiff to show more than speculation or conjecture as to the cause of an incident. (Doc. 24 at 8-9; PageID.1812-13). Defendant's analysis primarily focuses on *Tice v. Tice*, 361 So. 2d 1051, 1051 (Ala. 1978), and *Fowler v. CEC Entm't*, 921 So.2d 428,429 (Ala. Civ. App. 2005) which support dismissal based on speculation as to the cause of the fall. In arguing dismissal should be granted, Defendant asserts that it is equally probable that Plaintiff fell without external cause[1] or that in the course of her fall, Plaintiff knocked the green crate to where she fell. (Doc. 24 at 10; PageID.1814).

In response, Plaintiff argues that the evidence creates a dispute of material

---

[1] The record reflects that Plaintiff has experienced multiple falls, some of which have led to litigation and others that have not. (*See* Doc. 24 at 4-5; PageID.1808-09)

fact as to causation.  (Doc. 31 at 14-19; PageID.1888-93).  More specifically, Plaintiff

contends that her testimony, when considered along with the testimony of store

employees present at the time of the incident, shows that Plaintiff tripped over a

stack of water/crate located at the end of register #2.  (*Id.*)

> "[S]peculation—and theories in the alternative—as to the cause of her
> injury is insufficient to survive summary judgment. *See, e.g., Giles*, 574
> Fed. Appx. at 984 (finding similarly); *Cordoba v. Dillard's, Inc.*, 419
> F.3d 1169, 1181 (11th Cir. 2005) ("unsupported speculation ... does not
> meet a party's burden of producing some defense to a summary
> judgment motion. Speculation does not create a genuine issue of fact;
> instead, it creates a false issue, the demolition of which is a primary
> goal of summary judgment[ ]"); *Brantley v. International Paper Co.*,
> 2017 WL 2292767, *25 (M.D. Ala. May 24, 2017) ("plaintiffs cannot
> proceed to trial based on a mere hunch.... There is simply no
> evidence—beyond speculation ... plaintiffs have not identified an
> evidentiary basis connecting the mill's emissions to the.... damage.... it
> is just as likely as not that something other.... caused the.... damages....
> *See So. Ry. Co. v. Dickson*, 100 So. 665, 669 (Ala. 1924) ('Proof which
> goes no further than to show an injury could have occurred in an
> alleged way, does not warrant the conclusion that it did so occur,
> where from the same proof the injury can with equal probability be
> attributed to some other cause[ ]')"); *Ex Parte Mobile Power & Light
> Co.*, 810 So.2d 756, 759-760 (Ala. 2001) (emphasis in original) ("[a]s a
> theory of causation, a conjecture is simply an explanation consistent
> with known facts or conditions but not deducible from them as a
> reasonable inference. There may be two or more plausible explanations
> as to how an event happened or what produced it; yet, if the evidence is
> without selective application to any one of them, they remain
> conjectures only[ ]"); *Ex parte Harold L. Martin Distrib. Co., Inc.*, 769
> So.2d 313, 315-316 (Ala. 2000) ("[t]he fatal defect ... is that she failed to
> present evidence indicating that the ... ways[ ] in which she says
> [defendants] ... were, in any way, involved in a chain of causation
> resulting in her fall.... In fact, she could not identify the cause[ ]").

*Fuller v. Winn-Dixie Montgomery*, LLC, 2017 WL 3098104, *9 (S.D. Ala. July 19,

2017).

As an initial matter, it should be noted that the parties' respective positions as to causation are based on differing factual scenarios as to how Plaintiff's incident occurred. Defendant's motion for summary judgment asserts that Plaintiff's theory of causation is speculative but is based on the premise that *if Plaintiff fell on anything*, it was a green crate that had somehow come to be in the walkway which was open and obvious, thereby defeating her claim. Defendant based its arguments on Plaintiff's Complaint, interrogatory responses, and deposition testimony, which all referred to her tripping over a crate. (*See* Doc. 1-1, Doc 25-1, Doc. 33-8).[2]

Plaintiff's response to the motion for summary judgment, however, indicates that she tripped over a stack of water/crate which was intentionally placed at the end of Register #2 by Defendant. (Doc. 31, generally). As a result, Plaintiff argues that the stack of water/crate itself was the alleged hazard, and that because the stack was created by Defendant, whether it constituted an open and obvious hazard is a question for the jury. (*Id*.) Defendant has replied that this new alternative theory asserted by Plaintiff is evidence that Plaintiff does not know what caused her to fall and that regardless of the alleged defect, her claim fails because it was open and obvious. (Doc. 33, generally).

---

[2] In the Complaint, Plaintiff alleged, "When Plaintiff was checking out there was a crate in the aisle, she tripped ..." (Doc. 1-1 at 4; PageID.14). In her Interrogatory Responses, Plaintiff stated, "[o]n October 8, 2018, as the Plaintiff was checking out at Dollar Tree, a crate was in the aisle. The Plaintiff tripped and fell. (Doc. 34-1 at 2; PageID.1933). In her deposition testimony, Plaintiff stated "[w]ell we believe it was this green crate because apparently it had been knocked." (Doc. 25-1 at 13; PageID.1835).

Regardless of the alleged differences among the parties as to what caused Plaintiff to fall, the Court finds that a question of material fact exists as to causation. More specifically, the evidence presented by Plaintiff in this action rises above the level of pure speculation or the possibility that multiple potential causes of Plaintiff's fall are *equally* plausible. Plaintiff, in this action has maintained that she believed she fell as a result of a crate. First, according to the deposition testimony of the store manager and as evidenced by the incident report, immediately after the fall, Plaintiff indicated to Kaminski that she fell over "a stack of water and the edge of register #2". (*See* Doc. 32-2 at 6; PageID.1912). Second, Plaintiff's deposition testimony, while not the model of clarity, explained that while she did not see anything on the floor prior to her fall, she was made aware of a crate on the floor after her fall. More specifically Plaintiff testified as follows:

Q:     What happens next?

A:     I walk around here and I fell.

Q:     Okay. And what caused you to fall?

A:     Well, we believe it was this green crate because apparently it
       had been knocked. And the only reason that I say that is
       because the young man who checked me out, he told my
       husband this is what she fell on.

Q:     So you did not hear that?

A:     No, I did not but I mean he was holding it up. I could not hear
       what he was saying to my husband but –

Q:     So you did ever see the green crate after the incident?

12

A:     No.

Q:     Okay. So you're uncertain about what caused you to fall, correct?

A:     I'm pretty sure that's what it was. It was over here. Whenever I fell, it was over here and the young man picked it back up and put it back there.

Q:     Okay. So you were pointing to Defendant's—I'm sorry—Defendant's Exhibit 3 where you say the green crate was after your fall?

A:     I believe it was right there.

Q:     Okay. So I understood a minute ago you didn't see the green crate?

A:     No.

Q:     So how do you know it is or it was where you placed that circle?

A:     No, I didn't see it here. When I fell, I did not see where it was. It wasn't until I was over here and the young man picked it up. Like I said he picked it up and he's the one who said to my husband this is what she fell on.

(Doc. 32-1 at 4; PageID.1903).

Third, the testimony of the Dollar Tree employees supports Plaintiff's theory of causation. Thompson testified that while he did not see Plaintiff fall, he "heard the crate move" "like kind of slide" and that after the incident he noticed that the crate moved. (Doc. 31-3 at 16-17). Finally, and perhaps most significantly, Colston testified that she *saw Plaintiff fall as a result of the crate.* (Doc. 32-4 at 2-4; PageID.1917-18). Without the testimony of Colston, Plaintiff would be hard pressed to establish that she fell as a result of tripping over the stack of water/crate.

13

However, Colston's testimony substantiates not that the incident could have occurred in one of many ways, but that it did actually occur as the result of Plaintiff tripping over the stack of water/crate, as she asserts.

In finding that a dispute of material fact exists as to causation, the Court is not persuaded by Defendant's argument that Plaintiff's description of her fall in response to Defendant's motion is a new theory of causation supporting that causation is speculative. The Court has reviewed the relevant documents pointed out by Defendant which it contends show that Plaintiff has essentially created a new alternative theory of causation. However, despite Defendant's assertion, the objective record reflects only that Plaintiff has repeatedly maintained that she fell over a crate, which Plaintiff still contends. (*See* FN 1). The record does not establish the position of the crate prior to the fall or specifically restrict Plaintiff from asserting the theory of causation she has advanced in response to the subject motion. Objectively, then, the Court cannot find that Plaintiff's position has changed. The Court is also not dissuaded from denying summary judgment based on Defendant's argument that Colston's testimony is unreliable as, at this stage, the Court's duty is to determine only whether evidence exist which, when considered in a light most favorable to Plaintiff, creates a question of fact for the jury. *See Anderson, supra.* While a factfinder may be persuaded at trial that Plaintiff fell as a result of no defect at all, as Defendant has argued, the evidence when considered in a light most favorable to Plaintiff, supports the denial of summary judgment on

14

the issue of causation.

### 2. Actual or Constructive Notice

Defendant also contends that even if a hazardous condition existed, then it had no actual or constructive knowledge of its existence thereby defeating Plaintiff's claim. (Doc. 24 at 14-15; PageID.1818-19). For support, Defendant relies on the only evidence relating to notice, which is the testimony of Kaminski that he was in the area thirty minutes before Plaintiff's fall and nothing was out of place. (Doc. 25-3 at 1; PageID.1845).

As noted above, Plaintiff's response identifies the alleged hazard not as an out-of-place crate on the floor, but as a stack of water/crate undisputedly created by Defendant. As such, Plaintiff contends that Defendant knew of the alleged condition and argues that she need not prove notice because Defendant created the hazard. (Doc. 31 at 12-14; PageID.1886-88). For support, Plaintiff points to Defendant's policies and procedures which states "Do not stack merchandise along the immediate path to exit doors with items which cause the pathway to narrow or with items that are unstable and could fall in to the pathways." (Doc. 31 at 13; PageID.1887). Plaintiff further points to the deposition testimony of Kaminski who testified that the stacking the water/crates where they were located would narrow the pathway to the exit and Colston's testimony that Plaintiff would have to walk over the crates. (*Id.*) For legal support, Plaintiff relies on *Denmark v. Mercantile Stores, Inc.*, 844 So.2d 1189, 1192 (Ala. 2002) (customer who tripped over a roll of

15

plastic shopping bags was not required to establish store's actual or constructive knowledge of the hazard because the store's employees created the hazard); *Wal-Mart Stores, Inc. v. Rolin*, 813 So.2d 861, 864 (Ala. 2001) (customer who tripped over a barbecue grill that was protruding from a box was not required to establish store's actual or constructive knowledge of the dangerous condition when the store's employees created the dangerous condition); and *Wal-Mart Stores, Inc. v. McClinton*, 631 So.2d 232, 234 (Ala. 1993) (customer who jammed his foot on a gun cabinet protruding into the store aisle was not required to establish store's actual or constructive knowledge of the hazardous condition when evidence indicated that hazardous condition was created by store's employees). (Doc. 31 at 14; PageID.1888).

In reply, Defendant argues that Plaintiff's theory of the case establishes only that there were two possible causes of her fall, showing she has not produced evidence of the cause in fact of her fall.  (Doc. 33 at 5-6; PageID.1925-26). Defendant additionally argues that Plaintiff's arguments relating to Defendant's creation of a hazard because the stack of water/crate violated company policy, do not correctly state the correct legal duty owed to Plaintiff.  (*Id*.)[3]  Defendant, however, does not contest that the stack of water/crate was created by Defendant. (*Id*.)

---

[3] Plaintiff and Defendant also reference a lack of video surveillance in their respective positions.  However, the lack of video offers no assumption of notice to Plaintiff at this stage and creates no higher legal duty on behalf of Defendant.

"There are two lines of business invitee cases under Alabama law involving falls. Under one line of cases, there is a substance which the plaintiff slips on and which the plaintiff contends the business negligently failed to clean up. Under the other line, the plaintiff alleges that the business negligently created a hazardous condition that caused injury to the plaintiff. *Id.* When the defendant affirmatively creates the condition, the plaintiff need not introduce evidence of actual or constructive knowledge, because notice is presumed." *Blizzard v. Food Giant Supermarkets, Inc.*, 196 F.Supp.2d 1202 (M.D. Ala. April 22, 2002) (citations omitted).

Defendant's theory of the case falls within the first line of cases and Plaintiff's position falls within the second line of cases. However, Defendant does not contest that Dollar Tree is responsible for placing the stack of water/crate in the location where it was positioned on the day of Plaintiff's fall.  In fact, the evidence shows that the stack of water/crate has been placed in that location since the store was opened.  (Doc. 32-2 at 3; PageID.1909).   As such, the facts of this case are more akin to the facts in the cases relied on by Plaintiff wherein notice is presumed because the allegedly hazardous condition is created by the defendant. Accordingly, summary judgment is not due on based on a lack of notice.

### 3.    Open and Obvious

Defendant's final argument is that Plaintiff's negligence claim is due to be dismissed because the alleged hazard was open and obvious. (Doc. 24 at 11-13;

PageID.1815-17).  For support, Defendant points out that Plaintiff was not watching her path of travel and that the subject crate contrasted with the cement floor.  *Id*.

In response, Plaintiff argues that she has produced evidence which supports that the stack of water/crate was not visible, and that Plaintiff was not inattentive to her path or travel.  (Doc. 31 at 20-21; PageID.1894-95).  Specifically, Plaintiff relies on her deposition testimony that she generally looks ahead of her when walking, not straight down and on the testimony of Colston which indicates the stack would not have been visible to Plaintiff.  (*Id*.)  Relying on *Pittman v. Hangout in Gulf Shores, LLC*, 293 So.3d 937, 944 (Ala. 2019), Plaintiff additionally posits that questions regarding whether a potential hazard was "open and obvious" are generally left to a jury.

In reply, Defendant highlights the contrast between the crate at issue and the cement floor and points out that the stack of water/crate would have been well known to Plaintiff, a regular patron to the subject Dollar Tree.  (Doc. 33 at 6-9; PageID.1926-28).  Defendant also contends that Colston's deposition testimony is speculative and does not overcome Plaintiff's own testimony that there was nothing obstructing her view of her path of travel.  (*Id*.)  Finally, Defendant points out that Plaintiff's granddaughter had no difficulty walking the same path of travel just moments before Plaintiff's fall and that no other store patron had ever fallen as a result of the stack of water/crate.  (*Id*.)

18

A premises owner has no duty to warn of open and obvious dangers and is not "liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care." *Ex parte Indus. Dist. Servs. Warehouse*, 709 So. 2d 16, 20-21 (Ala. 1997) (quoting *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1997)). In cases where plaintiffs do not perceive a dangerous condition, Alabama courts apply an objective standard to determine whether a particular hazard is open and obvious; "the question is whether the danger should have been observed, not whether in fact it was consciously appreciated." *Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006). In order to be open and obvious, "the condition and the risk must be apparent to, and the type that would be recognized by, a reasonable person in the position of the invitee." *Hartzog v. Compass Bank*, 686 So. 2d 325, 327 (Ala. Civ. App. 1996).

Again, making the analysis of whether the alleged defect was open and obvious more difficult is the fact that Defendant's and Plaintiff's arguments are based on differing factual scenarios as to how Plaintiff fell. While Defendant argues that under either theory of liability presented, the alleged hazard was open and obvious, the Court is again narrowly persuaded that a question of material fact exists as to the open and obviousness. In the instant action, the record reflects that Plaintiff did not see the stack of water/crate prior to her fall. As such, the question is whether a reasonable person should have observed the stack of water/crate. While Defendant asserts that Plaintiff was inattentive, Plaintiff's testimony does

19

not indicate that she was distracted or not paying attention. Instead, Plaintiff testified that she generally looks ahead, just not straight down.  Photographs of the area of the incident additionally show that the stack of water was located either adjacent to or behind where Plaintiff was checking out and that she fell after taking one or two steps.  Finally, the testimony of Colston is once again important.  While Plaintiff testified that she did not subjectively appreciate the stack of water/crate, Colston testified that the stack of water/crate was not visible to Plaintiff due to where she was standing.  (Doc. 32-4 at 2-3; PageID.1917-18).  Accordingly, Colston's testimony supports that the stack of water/crate may have been obscured from the view of someone located where Plaintiff was located.  As such, the evidence presented by Plaintiff creates a genuine issue of material fact as to whether a reasonable person would have or should have objectively appreciated the allegedly dangerous condition.  As a result, summary judgment on the "open and obvious" issue is not warranted.

## C. Respondeat Superior

Defendant asserts the Plaintiff's claim of negligence against Defendant based on respondeat superior for the negligent acts of its employees should be dismissed because her negligence claim is due to be dismissed as discussed herein above. (Doc. 24 at15; PageID.1819; Doc. 33 at 8; PageID.1928).  Plaintiff has responded that her claim of negligence based on respondeat superior should not be dismissed because her negligence claim is not due to be dismissed based on the reasons

discussed hereinabove.  (Doc. 31 at 21-22; PageID.1895-96).  Because this Court has determined summary judgment is not due as to Plaintiff's negligence claim, it will not dismiss Plaintiff's claim of negligence based on respondeat superior.

### CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED.**

**DONE** and **ORDERED** this 11th day of March, 2021.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE